IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re:<br><br>PATRICK A. HARTNETT AND<br>TIFFANY P. HARTNETT,<br><br>*Debtors* | § § § § § § § § | BANKR. CASE NO. 10-53290<br><br>CHAPTER 7 |
| KERRY O'BRIEN AND<br>SUSAN O'BRIEN<br><br>*Plaintiffs,*<br><br>v.<br><br>PATRICK A. HARTNETT AND<br>TIFFANY P. HARTNETT<br><br>*Defendants.* | § § § § § § § § § § § § § § | ADV. NO. 11-05010 |

**PATRICK A. HARTNETT'S MOTION FOR RE-HEARING OR IN THE ALTERNATIVE FOR
AMENDMENT OF JUDGMENT**

NOW COMES, PATRICK A. HARTNETT, Debtor in the captioned Bankruptcy and Defendant in the captioned Adversary, and makes this his Motion for Re-Hearing or in the Alternative for Amendment of Judgment and would respectfully show to the Court as follows:

## BACKGROUND

1. On or about August 31, 2010, Defendant Andrew P. Hartnett, together with his wife, Tiffany P. Hartnett, filed for relief under Chapter 7 of the Bankruptcy Code.

2. On their Schedule F, Mr. and Mrs. Hartnett listed Mr. and Mrs. O'Brien for purposes of Notice; see Exhibit 12 in the Plaintiffs' Exhibit Book.

1

3. On or about January 31, 2011, the Plaintiffs, Mr. and Mrs. O'Brien (hereinafter, "*Plaintiffs*" or the "*O'Briens*") filed their Objection to Dischargeability of the obligation allegedly owing from the Debtors/Defendants to the O'Briens.

4. On December 9, 2011, this Court held a hearing in the captioned Adversary and on December 14, 2011 issued this Court's Memorandum of Opinion on Objection to the Dischargeability of a Debt ("*Memorandum Opinion*").

5. The Memorandum Opinion found that under 11 U.S.C. § 523(a)(2) the O'Briens were entitled to a $26,000.00 non-dischargeable judgment against Mr. Hartnett (Mrs. Hartnett having been non-suited during the hearing). The Court, however, failed to find liability under 11 U.S.C. §§ 523(a)(4) or 523 (a)(6).

6. Pursuant to Federal Rule of Bankruptcy Procedure 8015, the Defendant, Mr. Hartnett, respectfully files this his Motion seeking a rehearing, or in the alternative and pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59, that the Memorandum Opinion be amended in accordance with this Motion to determine that Mr. Hartnett has no liability under any sub-section of Section 523 (a), of 11 U.S.C.

### FACTUAL CONSIDERATIONS

7. In the Memorandum Opinion, this Court cites in detail the obligations arising under a residential construction contract (the "*Contract*") between the O'Briens and the Sally F. Powell Company, Inc., a Texas corporation, doing business as Chad Powell Homes ("*Chad Powell Homes*"). The Court determined that the Contract created an obligation owing by Chad Powell Homes to the O'Briens for approximately $26,000.00.

8. This Court further found that "On February 3, 2010, Mr. O'Brien learned that the contractor [Chad Powell Homes] did not have the funds to give them a credit or pay them $26,000.00 for the reverse change orders at closing." [Brackets supplied]. Instead, at closing, Mr. O'Brien received a letter dated February 11, 2010 which is

2

Exhibit 9 in the Plaintiffs' Exhibit Book. This letter is the document consistently referred to as a "note".

9. The February 11 letter was addressed to Mr. O'Brien and contained a single sentence of text, "Chad Powell Homes acknowledges its obligation to you in the amount of $26,000.00 for change orders." There are two versions of the letter under Plaintiff's Exhibit 9, one version being signed by Mr. Hartnett as Vice President of Chad Powell Homes, the other version being signed by Mr. Hartnett as Vice President of the company and also by Chad Powell.

10. The Court found in the Memorandum Opinion that the obligation from Mr. Hartnett to the O'Briens would be non-dischargeable for actual fraud, or as a false representation, and that Mr. Hartnett as a corporate officer of Chad Powell Homes directly participated in this fraud, and was liable for his personal act on behalf of Chad Powell Homes.

11. The fraud in question was allegedly the execution and delivery of the February 11, 2010 letter.

12. The Court recites that to establish false pretense or false representation, the creditor must show (1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied on by the other party. Alternatively to establish actual fraud a creditor must show (1) that the debtor made a representation; (2) that the debtor knew that the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance. Defendant believes this Court quite accurately described the applicable legal standards.

13. The O'Briens as Plaintiffs have the burden to establish these elements by a preponderance of the evidence. Similar to the consideration of the objection to discharge, the Plaintiffs assume the burden of proof under a preponderance of the evidence standard. See *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112

3

L.Ed.2d 755 (1991). All exceptions to discharge under § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." <u>In re Hudson, 107 F.3d 355, 356 (5th Cir.1997)</u>; <u>In Re David S. Hardwood, 404 B.R. 366, 386 (United States Bankruptcy Court, E.D. Texas, Tyler Division, 2009)</u>.

14. The uncontroverted testimony of the Defendant's witness, Mr. Steven Brook, was presented at the hearing. A true and correct transcript of Mr. Brook's testimony is attached hereto as Exhibit A. At page 6, lines 7 through 13, Mr. Brook testified that Mr. O'Brien initially asked for a Note or potentially a guaranty with regard to this $26,000.00 obligation. In fact Mr. O'Brien sent Mr. Brook the form of the note. Mr. Brook responded that Chad Powell Homes was not prepared to enter into the note because "frankly we did not think we could pay it." After several discussions and some emails, Mr. O'Brien demanded something, and finally the the O'Briens and Chad Powell Homes settled on the document shown as Plaintiffs' Exhibit 9.

15. By his uncontroverted testimony, Mr. Brook testified that days before the closing, he advised Mr. O'Brien that Chad Powell Homes could not pay a note. This notice was provided days prior to the execution and delivery of the February 11 document. In fact, in its Memorandum Opinion, at page 4, second paragraph, the Court finds that "On February 3, 2010, Mr. O'Brien learned that the contractor did not have the funds to give them [the O'Briens] a credit or pay them the $26,000.00 for the reverse change orders at closing." [Brackets supplied].

## ARGUMENT

16. The O'Briens had the burden by a preponderance of the evidence, to prove actual fraud or false pretenses. But, there was simply no evidence produced at the trial of any of the elements enumerated by this Court (see paragraph 12, above).

4

17. Simply put, the Contract created the $26,000.00 obligation. Chad Powell Homes through its lawyer, Mr. Brook, advised Mr. O'Brien before closing that Chad Powell Homes did not have the funds to pay that debt. Mr. O'Brien demanded some evidence of that Contract obligation for whatever purpose (the O'Briens' purpose in asking for the letter was not placed in evidence). Mr. Hartnett did not participate in the pre-closing discussions with the O'Briens concerning payment or some document concerning the obligation. Mr. Hartnett did nothing more than sign a single sentence *acknowledging* the existence of the Contract debt.

18. Mr. Hartnett made no representation other than that the debt was owed. Not only is that statement true, but Mr. O'Brien did not indicate that he relied on that statement in any way; he merely asked for and received an acknowledgement of the debt. There was no false statement, there was no reliance, and there were no damages flowing from the acknowledgment.

19. The letter at Exhibit 9 is not a note. A note is an instrument that contains a promise to pay. See Section 3.104(e), Texas Business and Commerce Code, "An instrument is a "note" if it is a promise...." A "promise" means "a written undertaking to pay money signed by the person undertaking to pay." However, "an acknowledgement of an obligation by the obligor is not a promise unless the obligor undertakes to pay the obligation." Section 3.103(a)(12), Texas Business and Commerce Code. The commentary, at paragraph 3, to Section 3.103, states as follows: "The last sentence of subsection (a)(12) is intended to make it clear that [a] ..... written acknowledgement of indebtedness is not a note unless there is also an undertaking to pay the obligation." [Brackets supplied].

20. Under these facts, and in accordance with the uncontroverted testimony of Mr. Brook, not only was there no separate undertaking to pay, but as set forth in this Court's Memorandum Opinion, Mr. O'Brien was told nearly ten days prior to the receipt of the letter at closing, that Chad Powell Homes could not pay.

## SUMMARY

21. Mr. Hartnett should not be denied discharge of the $26,000 obligation of Chad Powell Homes to the O'Briens because:

- The obligation arose under the preexisting Contract through alterations in the Contract by the O'Briens

- Days prior asking for or the receipt of the letter, the O'Briens were told Chad Powell Homes could not pay

- The O'Briens asked for some document that they could receive at closing

- Chad Powell Homes provided an acknowledgement of the debt, signed by Mr. Hartnett as Vice President

- The acknowledgement of the debt was in all things truthful

- There was no evidence of intent to deceive

- There was no evidence of deceit

- There is no evidence that the O'Briens relied on the written acknowledgment since a week earlier Mr. O'Brien had been told specifically Chad Powell Homes could not pay

- The letter was an acknowledgement of the debt. It was not a separate or a false promise to pay.

- There is no evidence of any promise or undertaking to pay given by Chad Powell Homes or Mr. Hartnett; on the contrary, there was a specific disclaimer of any ability to pay

WHEREFORE, PREMISES CONSIDERED, the Defendant, Patrick A. Hartnett, respectfully requests the indulgence of this Court to grant a re-hearing or in the

6

alternative to amend the Memorandum Opinion to find that the obligation of Chad Powell Homes to the O'Briens is not a debt of Mr. Hartnett or that if it is a debt of Mr. Hartnett, it should be dischargeable under Section 532 (a)(2) as well as (a)(4) and (a)(6). Mr. Hartnett also asks for such other and further relief as to which he may show himself entitled.

Respectfully submitted,

*Richard P. Corrigan*
Richard P. Corrigan
Texas Bar No. 04840700
The Law Offices of Richard P. Corrigan
1920 Nacogdoches Road, Suite 100
San Antonio, TX 78209
(210) 824-9505
(210) 824-3009 Facsimile
ATTORNEY FOR DEBTOR/DEFENDANT
PATRICK A. HARTNETT

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered on this 23 day of December, 2011, via facsimile no. 210.614.6401 to Michael J. O'Connor, The Law Offices of Michael J. O'Conner, The Ariel House, 8118 Datapoint Drive, San Antonio, TX 78229.

*Richard P. Corrigan*
Richard P. Corrigan

7